UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMALA J. MYRICK,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No. 1:19-cv-01659-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 13)** |

**I.   Introduction**

Plaintiff Pamala Myrick ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 13 and 14. After reviewing the record, the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Accordingly, Plaintiff's appeal is granted.

**II.   Procedural Background**

On June 25, 2015 Plaintiff filed an application for disability benefits claiming disability beginning October 9, 2014. AR 82. Plaintiff claimed heart problems, emphysema, bladder problems, uterus problems, rectal problems, irritable bowel syndrome, and neck problems. AR 82. The Commissioner denied the application initially on January 28, 2016, and on reconsideration on June 28, 2016. AR 112–15, 117–21.

Plaintiff requested a hearing which was held before Administrative Law Judge Robin Rosenbluth (the "ALJ") on May 18, 2018. AR 38–80. Plaintiff was represented by counsel at the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 5 and 6.

hearing.  AR 40.  On October 23, 2018, the ALJ issued a decision denying Plaintiff's application.  AR 17–36.  The Appeals Council denied review on October 16, 2019.  AR 6–11.  On November 22, 2019, Plaintiff filed a complaint in this Court.  Doc. 1.

### III.   Factual Background[2]

#### A.   Plaintiff's Testimony

Plaintiff completed high school and some college.  AR 45.  She last worked as a bank teller performing the job duties of customer service, cashing checks, reviewing accounts, resolving discrepancies, printing out statements,  preparing cashier's checks, and executing wire transfers.  AR 46. This job was performed mostly from a standing position. AR 46.  She suffers unpredictable symptoms that cause shortness of breath and faintness.  AR 51.  Her symptoms require her to lie down, elevate her feet, and breathe deeply.  AR 51.  She naps daily due to exhaustion.  AR 52.  She has a pacemaker to control her cardiac symptoms.  AR 54.  She uses the restroom 12-15 times daily due to bowel and bladder problems.  AR 55.

#### B.   Vocational Expert

Vocational expert Alima Sala (the "VE") testified at the administrative hearing on May 18, 2018.  AR 67–78.  The ALJ questioned the VE regarding a hypothetical individual of Plaintiff's age, education, and work history who could perform work at the light exertional level but could only stand and walk four hours in an eight-hour day with some manipulative and environmental limitations.  AR 69.  The VE opined that such an individual could not perform any of Plaintiff's past work as a teller, medical assistant, nursery product salesperson, or retail store supervisor.  AR 68–69.  Specifically, the limitation on standing and walking for a maximum of four hours per day would preclude Plaintiff's past work.  AR 69.  The VE identified the following transferrable skills derived from Plaintiff's past relevant work: "keeping records and handling money to or receive

---

[2] The issues Plaintiff raises on appeal center around the vocational evidence and the ALJ's findings concerning the same.  Consistent with the parties' concise factual summaries, the factual summary here will focus on those topics and omit Plaintiff's medical history as the medical history is not pertinent to Plaintiff's claims of error.

from customers using basic math skills . . . compute cost of items purchased and make change, keep records according to prescribed systems, operate adding machines, calculators, cash registers, adapting to routine work." AR 72.  The VE testified that these job skills were transferrable to other jobs existing in significant numbers in the national economy which could be performed by an individual with the vocational profile outlined in the ALJ's hypothetical. AR 70.  Specifically, the VE testified that such an individual could perform the occupations of clearing house clerk (DOT No. 216.382-026), dividend clerk (DOT No. 216.482-034), and collector (DOT No. 241.367-010). AR 70.  The ALJ inquired how much vocational adjustment would be necessary to transition from Plaintiff's previous occupation as a teller to the other identified occupations. AR 72.  The VE testified there would be very little vocational adjustment required. AR 72.

### IV. **Standard of Review, Generally**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112

F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

### V.     **The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014)

### VI. The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of October 9, 2014. AR 22. At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease, cardiomyopathy, status post pacemaker implant, chronic obstructive pulmonary disease (COPD), emphysema, paroxysmal atrial fibrillation, degenerative disc disease of the cervical spine area, and cervical subluxation syndrome. AR 22. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926). AR 22–23.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), except that she could only stand and walk for four hours in an eight-hour day with some manipulative and environmental limitations. AR 23–29. At step four, considering Plaintiff's RFC, the ALJ found that Plaintiff could not perform her past relevant work as a teller, medical assistant, nursery product salesperson, or retail store supervisor. AR 29. At step five, the ALJ found that Plaintiff had acquired the work skills of keeping records and handling money from her past work as a teller, skills which were transferrable to other jobs existing in significant numbers which she could perform, namely clearing house clerk (DOT No. 216.382-026), dividend clerk (DOT No. 216.482-034), and collector (DOT No. 241.367-010). AR 30. Accordingly, the ALJ found that Plaintiff was not disabled. AR 31.

### VII. Issues Presented

Plaintiff asserts four claims of error. First, Plaintiff contends that the transferable skills the ALJ identified (keeping records and handling money) are not truly skills. Br. at 5, Doc. 13. Second, Plaintiff contends that the ALJ applied the wrong legal standard with respect to the vocational adjustment of a 60-year-old claimant limited to light work. Br. at 8. Third, Plaintiff contends that the occupations of dividend clerk, clearing house clerk, and collector do not require the purported transferable skills the ALJ identified. Br. at 9. Finally, Plaintiff contends that the ALJ's

transferable skills analysis was not based on relevant criteria. Br. at 10. Plaintiff's second, third, and fourth claims of error will be addressed together as they all relate to the vocational adjustment analysis.

### A.  Whether Keeping Records and Handling Money are Truly Skills

#### 1.  Applicable Law

The commissioner bears the burden at step five to prove that the claimant can perform other work in the national economy given her RFC, age, education and work experience. 20 C.F.R. § 416.912(g); *Silveira v. Apfel*, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). This burden can be satisfied in two ways: 1) with reference to the testimony of a vocational expert (VE), or 2) with reference to the Medical-Vocational Guidelines (the "Grids"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *3 (C.D. Cal. Mar. 2, 2018). Where the claimant suffers from both exertional and non-exertional limitations the ALJ must first determine whether the Grids mandate a finding of disability given the claimant's vocational profile and, if not, must use the Grids as a framework and consult a VE to determine how much the non-exertional limitations limit the range of work otherwise permitted by the exertional limitations. *Nowden*, 2018 WL 1155971, at *3; *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999).

Where, as here, the claimant's RFC is limited to light work, she is of advanced age (55 and older), has a high school education or more (with no education providing for direct entry into skilled work), and previous work experience in skilled roles, the Grid Rules provide that the disability determination hinges on whether the individual acquired transferable skills in her previous skilled roles. If she did not acquire transferable skills, Grid Rule 202.06 dictates a finding of disability. If she did acquire transferable skills, Grid Rule 202.07 dictates a finding of non-disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Pursuant to SSR 82-41(2)(a), a "skill" is defined as follows:

> A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.
>
> Skills are not gained by doing unskilled jobs, and a person has no special advantage if he or she is skilled or semiskilled but can qualify only for an unskilled job because his or her skills cannot be used to any significant degree in other jobs…

Similarly, 20 C.F.R. § 404.1568(a) provides that "[a] person does not gain work skills by doing unskilled jobs."

## 2.  **Analysis**

Here, the ALJ found (based on the VE's testimony), that Plaintiff acquired the skills of "keeping records and handling money" in her previous role as a teller, skills which the ALJ found were transferable to other jobs existing in significant numbers which Plaintiff could perform, including: 1) clearing house clerk (light, skilled, SVP 5, DOT 216.382-026), 2) dividend clerk (light, skilled, SVP 5, DOT 216.482-034), and 3) collector (light, semi-skilled, SVP 4, DOT 241.367-010).  Accordingly, the ALJ found Plaintiff not disabled pursuant to Grid Rule 202.07. AR 31.

Plaintiff argues that the ALJ erred here because "keeping records and handling money" are not skills.  Plaintiff's argument is fairly straightforward and can be broken down as follows: 1) keeping records and handling money are tasks common to both skilled and unskilled jobs alike,[3] 2) pursuant to SSR 82-41(2)(a), "Skills are not gained by doing unskilled jobs," and 3) therefore,

---

[3] For example, Plaintiff quotes the DOT's description of the unskilled job Cashier II (DOT 211.462-010).  A Cashier II "receives cash from customers or employees in payment for goods or services and records amount received . . ."

7

keeping records and handling money are not "Skills" as that term is used in the regulations. Br. at 5–8.

> Defendant's response to Plaintiff's first argument begins with the following assertion:
>
> In essence, the issue is whether keeping records, handling money, computing the cost of items purchased and making change, and operating adding machines, calculators, and cash registers amount to 'skills' or merely 'unskilled tasks.' Plaintiff points out that some of the foregoing activities, such as receiving cash from customers and handling a register, appear to be common in unskilled occupations, such as that of a cashier II (DOT No. 211.462-010)

Resp. at 3–4, Doc. 14. The issue is not whether the seven skills identified by the VE are skills or unskilled tasks. Rather, Plaintiff correctly focuses only on the two tasks identified by the ALJ (not all seven identified by the VE) in support of the ALJ's conclusion. Although the ALJ did appear inclined to adopt the VE's conclusions, and the VE did identify seven transferable job skills, in reciting the skills identified by the VE the ALJ only recited "keeping records and handling money." AR 30. Accordingly, the Court agrees that the focus should be on those two.

Defendant concedes that "there appears to be some logic to Plaintiff's argument that an activity involved in an unskilled occupation cannot be a 'skill.'" Resp. at 4. Nevertheless, Defendant contends that agency policy supports the view that certain tasks are unskilled when "performed at a more rudimentary level," but skilled when performed at "a more detailed or complex level." *Id.* Defendant contends that cash handling and record keeping are two such tasks which are unskilled when performed at the level of retail cashier, for example, but skilled when performed at the level of bank teller (as in Plaintiff's previous role). *Id. Moreover,* Defendant contends those tasks are skilled when performed at the level of bank teller because "[that] occupation deals with larger sums, using complex systems, and the slightest error could result in a significant loss of funds for a customer of the bank," whereas "an unskilled occupation such as Cashier II may involve handling smaller sums in a more routine and less complex environment." *Id.*

Even accepting Defendant's generalization that retail cashiers handle less cash and less complex record keeping systems than bank tellers, Defendant's argument is nevertheless unpersuasive because it is ungrounded in the ALJ's opinion and the VE's testimony upon which the ALJ's opinion was based. Neither the ALJ nor the VE identified Plaintiff's transferable skills as handling *large* amounts of cash or using *complex* record keeping systems. The Court cannot read those modifiers into the ALJ's opinion, but must take that opinion as written. *See Bray*, 554 F.3d 1219, 1225 (9th Cir. 2009) (noting that courts must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").[4] The ALJ identified Plaintiff's transferable skills only as "keeping records and handling money" which is not sufficiently descriptive to distinguish those tasks from the same tasks performed in unskilled occupations such as Cashier II. *See* SSR 82-41(2)(a) ("A skill is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties . . .").

Because "[a] person does not gain work skills by doing unskilled jobs," (20 C.F.R. § 404.1568(a)), and because cash handling and record keeping are tasks common to both skilled and unskilled jobs alike, it stands to reason that simple cash handling and record keeping (with no distinguishing features) cannot be considered transferable work skills.

    **B.**     **Vocational Adjustment Analysis**

        **1.**     **Applicable Law**

20 C.F.R. § 404.1568(d)(4) provides that "[i]f you are closely approaching retirement age (age 60 or older) and you have a severe impairment(s) that limits you to no more than light work, we will find that you have skills that are transferable to skilled or semiskilled light work only if the

---

[4] In fact, this frequently quoted statement from the *Bray* panel arose in this very context, namely the court's review of an ALJ's transferable skills analysis at step five. *Id.*

light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."

### 2. <u>Analysis</u>

Here, the ALJ found that very little vocational adjustment would be required for Plaintiff to transition to the jobs identified by the VE. AR 30–31. In support of this finding, the ALJ stated that she asked the VE if "any occupations exist . . . which required skills acquired in the claimant's past relevant work but no additional skills." AR 30. As Plaintiff emphasizes, the hearing transcript does not reflect that the ALJ asked the VE this question, and the Defendant does not contend otherwise.

Relatedly, Plaintiff notes that the three jobs identified by the VE do not appear to require one of her two purported transferable skills, namely handling money. Indeed, per the DOT, a clearing house clerk "[c]ompiles settlement data and submits checks, drafts, and other items to clearinghouse association for exchange and settlement with other banks," among other related tasks. DOT No. 216.382-026. A dividend clerk "computes, records, and pays dividends to customers of brokerage firm," among other related tasks. DOT No. 216.482-034. A collector "locates customers to collect installments or overdue accounts" among other related tasks. DOT No. 241.367-010. None of these job descriptions mentions cash handling, nor did the VE explicitly contend that those jobs do require handling cash. The VE made no attempt to articulate the factual overlap between Plaintiff's previous jobs and the three jobs identified by the VE.

Rather than discussing the overlap in job skills, the ALJ simply asked the VE how much vocational adjustment would be required for Plaintiff to transition to the identified jobs, and the VE responded "very little vocational adjustment." AR 72. The VE based this conclusion solely on the fact that the three identified jobs had SVPs of 4 or 5, and Plaintiff's past role as a teller also had an SVP of 5. Thus, the VE treated SVP as dispositive of the vocational adjustment inquiry under 20

C.F.R. § 404.1568(d)(4). That regulation does not mention SVP. Moreover, the explanation of SVP in the agency's Medical and Vocational Quick Reference Guide reveals that there is very little, if any, relationship between the concepts of SVP and vocational adjustment.

Specific Vocational Preparation [SVP] refers to "the amount of time required for a typical claimant to: learn the techniques, acquire the information, and develop the facility needed for average performance in a job." POMS DI 25001.001. A job with an SVP of 5, for example, requires between six months and a year to learn. *Id.* The fact that two potentially unrelated jobs require the same amount of time to learn does not mean that a claimant can readily transition between the two. Thus, the fact that bank teller has an SVP of 5 cannot serve as the sole basis to support the ALJ and VE's conclusion that Plaintiff could transition from bank teller to clearing house clerk, dividend clerk, or collector with "very little vocational adjustment" under 20 C.F.R. § 404.1568(d)(4). Under that regulation, the vocational adjustment inquiry involves consideration of the common "tools, work processes, work settings, or the industry" between jobs, not the amount of time it takes to learn each job.

In the three pages of analysis within Defendant's five-page response brief, Defendant does not acknowledge the issues identified by Plaintiff regarding the ALJ's vocational adjustment analysis. Rather, Defendant simply contends that Plaintiff could transition from bank teller to the jobs identified by the VE because her job skills are clerical skills with "universal applicability across industry lines." Resp at 5. Defendant cites SSR 82-41 in support of his argument, which provides that "where job skills have universal applicability across industry lines . . . transferability of skills to industries differing from past work experience can *usually* be accomplished with very little, if any, vocational adjustment where *jobs with similar skills* can be identified as being within an individual's RFC." (emphasis added). Defendant's argument is ungrounded in the ALJ's opinion. Neither the ALJ nor the VE stated that Plaintiff acquired clerical skills of universal

applicability. Rather, the ALJ found that Plaintiff acquired the skills of keeping records and handling money. Even assuming those are clerical skills of universal applicability, that does not end the inquiry, as SSR 82-41 simply states that such skills "usually" can facilitate a transition to "jobs with similar skills." It does not follow that the present case is necessarily a "usual" case, or that the jobs identified by the VE are "jobs with similar skills" to the Plaintiff's past jobs. The record contains no such factual findings, and neither the ALJ nor the VE advanced Defendant's "clerical skills of universal applicability" explanation.

Finally, Defendant faults Plaintiff for "fail[ing] to provide any vocational or legal authority indicating that the clerical skills acquired at her bank teller job would require more than very little adjustment . . ." *Id.* The burden at step five is on the Commissioner, however, not on the Plaintiff. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). Thus, Plaintiff had no obligation to establish that transition to the three identified jobs *would* require significant vocational adjustment; rather the commissioner had the burden to establish that the transition would *not* require significant vocational adjustment. The findings in the record fall short on this point.

### VIII. Conclusion

The ALJ only identified two purported transferable skills here, namely keeping records and handling money, skills which are common to unskilled jobs such as Cashier II, a notable fact in light of the principle that "[a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 404.1568(a). One of those two skills (handling money) is absent from the DOT's description of the three jobs identified by the VE that Plaintiff could transition into. The record is devoid of discussion as to why the VE believed there was significant overlap between Plaintiff's prior role as a teller and the VE's three identified jobs. This is particularly notable when dealing with a claimant of Plaintiff's age (60 and older) who is limited to light work and unable to perform her past relevant work, in which case the VE's identified jobs must be "so similar to [her] previous work that [she]

would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry" 20 C.F.R. § 404.1568(d)(4).

Because the factual basis for the VE's conclusion was insufficiently developed, and because the sole fact supporting her conclusion was that Plaintiff's teller occupation and the three jobs identified by the VE had similar SVP levels (a concept unrelated to vocational adjustment), the Court finds that the VE's testimony (even though uncontroverted) did not constitute substantial evidence to support the ALJ's decision.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (noting that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations and quotations omitted).

### IX.   Remand for Further Proceedings

Because the record is inconclusive remand is appropriate to consider whether Plaintiff acquired transferable skills from her prior employment which would facilitate a transition to other jobs existing in significant numbers.  *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

### X.   Order

The Court finds that substantial evidence and applicable law do not support the ALJ's conclusion.  Accordingly, it is ordered that the Commissioner's decision is reversed, and this matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Pamala Myrick, and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 10, 2020**                       **/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE